UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORP. and BNSF RAILWAY COMPANY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| EVERETT OWEN, et al., | ) ) ) | |
| Intervenor-Plaintiffs, | ) ) | |
| v. | ) | Case No. 16-cv-1094-JTM-TJJ |
| | ) ) | |
| CIMARRON CROSSING FEEDERS, LLC, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| NATIONAL RAILROAD PASSENGER CORP. d/b/a AMTRAK; and BNSF RAILWAY COMPANY, | ) ) ) ) | |
| Defendants and Intervenor-Defendants. | ) ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Intervenor-Plaintiffs' Motion to Compel Against

BNSF Railway Company ("BNSF") and National Railroad Passenger Corporation ("Amtrak")

(jointly "Railroad Plaintiffs") (ECF No. 56). Intervenor-Plaintiffs ask the Court to compel

Railroad Plaintiffs to respond to an interrogatory and produce documents responsive to three

requests for production. As set forth below, the Court grants the motion to compel with respect to

Intervenor-Plaintiffs' Request for Production No. 26, but denies the rest of the motion.

## I.      FACTUAL BACKGROUND

The complaint[1] in this case alleges that in the early hours of Monday, March 14, 2016, Intervenor-Plaintiffs were riding as passengers on an eastbound Amtrak train (the "Train") that was traveling through Gray County, Kansas. Amtrak owned and operated the Train on railroad tracks owned and maintained by BNSF. The BNSF tracks that the Train was operating over run in a generally east-west direction through Cimarron, Gray County, Kansas.

The BNSF track located west of Cimarron has highways on both sides with U.S. Highway 50 running parallel along the north side of the tracks. There is no fencing or other protective barriers between the BNSF tracks and Highway 50 to prevent vehicles from entering BNSF's right-of-way or its track. Cimarron Crossing Feeders, LLC ("CCF")  owns and operates a cattle feeding facility west of Cimarron and north of Highway 50 in the general location where the incident giving rise to this litigation occurred. The CCF cattle feeding facility sits atop a hill, resulting in a steep decline from the facility to Highway 50.

At approximately 9:00 a.m. on March 13, 2016, CCF employees were loading a truck owned and operated by CCF. The CCF employees left the truck unattended, out of gear, and without any brakes applied. That truck rolled downhill to the south, crossed over U.S. Highway 50, and struck the BNSF rail tracks, causing damage to the tracks. CCF retrieved the truck that struck the BNSF rail track at some time on March 13, 2016.

Intervenor-Plaintiffs allege the track structure was left in a defective condition, violating federal regulations, industry standards, and BNSF's own rules for over twelve hours.

---

[1] The facts in this section are from the allegations contained in the Fourth Amended Complaint in Intervention (ECF No. 69). The original Complaint (ECF No. 1) was filed by Amtrak and BNSF against Cimarron Crossing Feeders, LLC. Subsequent amendments were filed as various Intervenor-Plaintiffs entered the case. See ECF Nos. 22, 37, and 45.

At approximately 12:02 a.m. on March 14, 2016, the Train proceeded over the allegedly defective track, applied the brakes, and derailed the last six cars on the Train ("Derailment"). The Derailment resulted in serious injuries to Intervenor-Plaintiffs.

Intervenor-Plaintiffs allege general liability, negligence, gross negligence, and intentional disregard for public safety against Amtrak, BNSF, and CCF. In addition, they allege negligence per se against BNSF. For purposes of deciding the instant motion only, the Court summarizes Intervenor-Plaintiffs' claims against the Railroad Plaintiffs and Defendant CCF generally as follows: As to Amtrak, failure to exercise reasonable care, failure to properly operate the Train, and intentional disregard for public safety. As to BNSF, failure to exercise reasonable care, failure to properly inspect, maintain and repair the rail tracks where the Derailment occurred, and intentional disregard for public safety. And, as to CCF, failure to take proper steps and procedures to prevent its truck from damaging the rail tracks, failure to notify after the damage occurred, and intentional disregard for public safety.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[2]

---

[2] Fed. R. Civ. P. 26(b)(1).

Discovery requests must be relevant on their face.[3] Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[4] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[5] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[6] Relevancy determinations are generally made on a case-by-case basis.[7]

Federal Rule of Civil Procedure 26 requires the court to limit the frequency or extent of discovery if the court determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in this action; or (iii) the proposed discovery is outside the scope permitted by the rule.[8]

---

[3] *Waters v. Union Pac. R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016).

[4] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[5] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[6] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[7] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[8] Fed. R. Civ. P. 26(b)(2)(C).

### III.    DISCOVERY REQUESTS AND RESPONSES IN DISPUTE

#### A.    Intervenor-Plaintiffs' Request for Production Nos. 1 and 7[9]

**Request for Production No. 1 [to BNSF]:**  Please produce the contract that provides track rights for Amtrak to travel over the La Junta Subdivision. This request includes the Master Agreement, all supplemental agreement(s), and [r]elated documentation of any  agreements.

**<u>RESPONSE</u>:** BNSF objects to this Request for the reason that in requesting the entire content of any Master Agreement with Amtrak, the Request seeks information that is not relevant to any parties' claim or defense, is not proportional to the needs of the case and furthermore requires the disclosure of proprietary or other confidential commercial information.[10]

Intervenor-Plaintiffs assert that BNSF's Master Agreement is highly relevant to the claims in this case that the track at issue was inadequately inspected and maintained. They claim "BNSF had an incentive to not slow order or downgrade the Class of this track, even though it should have due to the conditions of the track, because it was profiting from Amtrak's use."[11] They contend the following items contained in the Master Agreement are of importance: the rates Amtrak paid to BNSF, the maintenance responsibility for the track at issue, incentives for keeping the track at a certain Class, and the percentage of payments directed towards track maintenance. They also note that the Railroad Plaintiffs expressed concerns over the proprietary or confidential nature of the Master Agreement can be addressed with the Protective Order entered in this case. Finally, Intervenor-Plaintiffs argue that BNSF's proportionality objection is "boilerplate" and therefore improper.

---

[9] Request Nos. 1 and 7 are identical in all material respects, except that they are directed to the individual Railroad Plaintiffs, BNSF and Amtrak, respectively. Likewise the responses to these Requests contain essentially identical objections. Amtrak's Answers & Objs., ECF No. 57-2 at 6.

[10] BNSF's Answers & Objs,, ECF No. 57-1 at 6.

[11] Intervenor-Pls.' Mem. in Supp. of Mot. to Compel, ECF No. 57 at 5.

In response, Railroad Plaintiffs argue this case involves the derailment of an Amtrak train after CCF's truck struck the tracks near Cimarron, and does not involve track conditions or track issues at any other location. Railroad Plaintiffs explain that Amtrak must rely upon track systems owned by freight railroads and must enter into agreements with such railroads for use of the tracks and facilities at agreed upon rates. Because of the unique circumstances in each situation, each agreement has unique terms, conditions and rates. Railroad Plaintiffs maintain that production of the entire Master Agreement between Amtrak and BNSF would disclose proprietary and highly confidential commercial information that is not relevant to any claim or defense in this case, nor is the request proportional to the needs of this case.

With regard to the specific items contained in the Master Agreement that Intervenor-Plaintiffs contend are relevant to their claims, Railroad Plaintiffs argue the rates Amtrak pays to BNSF are not relevant and that Intervenor-Plaintiffs have not articulated how this information is relevant to their claims. They argue it is undisputed that BNSF was responsible for the inspection and maintenance of the track at issue, that its obligation to do so is set by federal regulation, that the standards by which BNSF was to inspect and maintain the track are governed by the Federal Railroad Administration rather than by contract between Amtrak and BNSF, and that federal regulations may preempt many claims asserted by Intervenors-Plaintiffs.

The Court agrees with Railroad Plaintiffs that this case involves track conditions only in the particular area near Cimarron where the Derailment occurred. The entire Master Agreement between BNSF and Amtrak governs much broader rights and obligations than those related to the track at issue in this case. Although Intervenor-Plaintiffs make a general statement that the agreement "is highly relevant to the claims in this case that the track at issue was inadequately inspected and maintained," they offer no explanation regarding the relevance of the entire

6

agreement. The Court finds that the entire Master Agreement on its face does not appear to be relevant.

 Intervenor-Plaintiffs therefore have the burden to show the relevancy of their request. The Court is aware that Intervenor-Plaintiffs contend there is certain specific information contained in the Master Agreement which is relevant to their claims that the Derailment in this case was caused by BNSF's failure to properly inspect and maintain the track,[12] and/or by their operation of the Train at an excessive speed.[13] But even if the rate information in the Master Agreement could be extrapolated to the specific area of track at issue (and it is not clear that it could), that information would not provide any indication whether the track where the Derailment occurred was properly inspected and maintained. The same is true with regard to information that may be included in the Master Agreement regarding the scope of BNSF's responsibility for track maintenance[14] and the percentage of payments directed toward track maintenance. Similarly, information included in the Master Agreement on incentives for keeping the track at a certain Class would not provide any indication whether the Train was operating at an excessive speed at the time of the Derailment.

 Moreover, the Court has already entered an order which allows the parties to inspect and examine the track where the Derailment occurred and within five miles on both sides of the Derailment, so that Intervenor-Plaintiffs can directly assess and evaluate whether the track had

---

[12] Intervenor-Plaintiffs reference provisions of the Master Agreement regarding the rates Amtrak paid to BNSF, the maintenance responsibility for the track, and the percentage of payments directed toward track maintenance.

[13] Intervenor-Plaintiffs reference provisions of the Master Agreement offering incentives for keeping the track at a certain Class, which determines the speed at which trains can be operated.

[14] Railroad Plaintiffs state it is undisputed that BNSF was responsible for inspection and maintenance of the track at issue, and Railroad Plaintiffs will be bound by that representation. Intervenor-Plaintiffs need not obtain the Master Agreement to prove BNSF was responsible for inspecting and maintaining the track at issue.

been properly maintained prior to the Derailment and whether the track was in a diminished

condition that required the Train to be operated at a reduced speed. In short, the discovery

sought by Intervenor-Plaintiffs can be obtained from the inspection of the track, through

depositions, or other discovery. The potential harm to Railroad Plaintiffs from disclosure of the

Master Agreement, which they claim contains proprietary and highly confidential commercial

information, outweighs Intervenor-Plaintiffs' need for the requested information.[15]

For the reasons discussed above, the Court sustains Railroad Plaintiffs' objections to Intervenor-

Plaintiffs' Request for Production Nos. 1 and 7.

**B.     Intervenor-Plaintiffs Interrogatory No. 7**

**Interrogatory No. 7 [to BNSF]: Please itemize all payments made to your
railroad, in the ten years prior to the Cimarron Derailment, for allowing
Amtrak to travel over the tracks from Dodge City to La Junta. If necessary,
identify the percentage of any payments that can be attributed to the track
between Dodge City and La Junta, and what formula you need to calculate
the apportionment.**

**ANSWER:** BNSF objects to this interrogatory as overly broad on the grounds it
is not reasonably limited in time, nor sufficiently limited in scope. BNSF further
objects to this request on the grounds it is vague and ambiguous as to what
information is being sought. Moreover, BNSF objects to the extent this request
seeks information which is irrelevant and immaterial to Plaintiff's claims and/or
the issues in this case. Lastly, BNSF objects to the extent this request purports to
require the disclosure of trade secrets or other confidential commercial
information. [16]

---

[15]   The Court is aware of BNSF's arguments that its maintenance obligations are set by federal
regulation, that the standards by which BNSF was to inspect and maintain the track are governed by the
Federal Railroad Administration rather than by contract between Amtrak and BNSF, and that federal
regulations may possibly preempt many claims asserted in this case. The parties have not briefed those
issues, and the Court need not address them in order to decide this motion to compel.

[16] BNSF's Answers & Objs., ECF No. 57-1 at 4.

Railroad Plaintiffs argue the information regarding rates paid by Amtrak to BNSF is not relevant. Additionally, they argue that this Interrogatory request for ten years of itemized payments is overwhelmingly burdensome and intended to burden, oppress and harass Railroad Plaintiffs by requiring them to provide proprietary and confidential information that will not support Intervenor-Plaintiffs' claims.

Intervenor-Plaintiffs claim Interrogatory No. 7 seeks highly relevant information regarding Amtrak's payments to BNSF for use of the track at issue. They do not elaborate on this point. Again, they contend any concerns Railroad Plaintiffs may have regarding the confidential or proprietary nature of this information can be addressed by the Protective Order entered in this case.

As noted above, this case involves track conditions only in that particular area near Cimarron where the Derailment occurred and, even if the itemized payment information requested by Intervenor-Plaintiffs could be extrapolated to the specific area of track at issue (and it is not clear that it could), that information would not provide any indication whether the track where the Derailment occurred was properly inspected and maintained.  The Court finds that Intervenor-Plaintiffs' request for an itemization of payments Amtrak made to BNSF for allowing Amtrak to travel over the tracks from Dodge City to La Junta does not appear relevant on its face.

The burden is therefore on Intervenor-Plaintiffs to show the relevancy of the information requested. However, they have offered no explanation for why or how information regarding Amtrak's payment to BNSF for track usage is relevant to their claims. Nor have they provided any support for their request for ten years of payment information, which the Court finds overly

broad and unduly burdensome given the single Derailment that is the basis for Intervenor-Plaintiffs' claims.

The Court finds the track payment information requested by Intervenor-Plaintiffs is not relevant on its face, and they have not met their burden to show the relevancy of the request. The Court therefore sustains BNSF's objections to Interrogatory No. 7.

### C.   Intervenor-Plaintiffs' Request for Production No. 26

**Request for Production No. 26 [to BNSF]:** Please produce all manuals utilized by BNSF regarding how to investigate train derailments. This should include, but is not limited to, the BNSF Train Derailment Cause Finding Manual and the AAR Train Derailment Cause Finding Manual.

**<u>RESPONSE</u>:** BNSF objects to this request on the grounds that it is overly broad in that it is not limited to a relevant time period. BNSF further objects on the grounds that this request is vague and ambiguous as to what is being requested. BNSF objects to the request on the grounds that the documents sought are protected by the attorney-client privilege and the work-product doctrine. Finally, the documents requested are proprietary and confidential in nature and beyond the scope of discoverable information.[17]

BNSF contends the actions of CCF caused the Derailment. Intervenor-Plaintiffs assert claims against the Railroad Plaintiffs and CCF for causing the Derailment. The cause of the Derailment is clearly at issue. Request for Production No. 26 thus appears relevant on its face. Therefore, BNSF bears the burden of showing that the documents requested are not relevant to the claims and defenses in this case.

BNSF does not dispute the relevance of Request No. 26. However, BNSF argues this particular request should be denied in any event, because Intervenor-Plaintiffs filed their motion to compel without making any good faith effort to confer regarding whether BNSF had produced the requested materials as to the procedures BNSF utilizes to investigate derailments.

---

[17] BNSF's Answers & Objs., ECF No. 57-1, at 15.

BNSF's response states counsel for Railroad Plaintiffs and Intervenor-Plaintiffs discussed each of Intervenor-Plaintiffs' discovery responses on October 13, 2016 and agreed supplementation would be provided for several requests, including Request No. 26. Counsel for Railroad Plaintiffs stated they would produce engineering instructions setting forth the procedures followed by BNSF to investigate derailments, but indicated they were unaware of any current document entitled "BNSF Train Derailment Cause Finding Manual" ("BNSF Manual"). Railroad Plaintiffs also advised they were unclear as to what the "AAR Train Derailment Cause Finding Manual" ("AAR Manual") was and requested clarification from Intervenor-Plaintiffs' counsel. Immediately after the parties' call on October 13, 2016, Intervenor-Plaintiffs' counsel e-mailed Railroad Plaintiffs' counsel the cover page of the AAR Manual, but did not mention the BNSF Manual or that production of the engineering instructions as to the procedures for derailment investigations was insufficient. Nor did a follow up letter on October 17, 2016, from Intervenor-Plaintiffs' counsel to Railroad Plaintiffs' counsel, memorializing the parties' October 13, 2016 discussion, mention those items. BNSF notes the letter did state that Intervenor-Plaintiffs' counsel would identify the specific engineering instructions they sought, but Intervenor-Plaintiffs did not do so before filing the instant motion.

Based upon its review of BNSF's summary of events, including the October 13, 2016 e-mail and October 17, 2016 letter from Intervenor-Plaintiffs' counsel, the Court finds BNSF's failure to confer in good faith argument unpersuasive. Counsel for the parties conferred regarding Request No. 26 on October 13. Following that conversation, BNSF produced its engineering instructions and Intervenor-Plaintiffs sent BNSF the cover page of the AAR Manual, clearly indicating that counsel for both parties realized Request No. 26 was still at issue. BNSF notes that Intervenor-Plaintiffs' October 17 letter did not mention the BNSF Manual or that production of

11

the engineering instructions as to the procedures for derailment investigations was insufficient. That letter, however, also did not state that Intervenor-Plaintiffs were withdrawing their Request No. 26 or that they were willing to hold in abeyance their request for documents responsive to that request, as Intervenor-Plaintiffs explicitly stated in the letter that they would do with regard to a number of other outstanding discovery requests. BNSF clearly had not responded completely to Request No. 26. The adequacy or inadequacy of the response was still in dispute. BNSF cannot avoid producing documents responsive to a clearly relevant request in reliance on Intervenor-Plaintiffs' oversight, failing to note in its October 17 letter that the engineering instructions BNSF produced were insufficient.

BNSF's objection to Request for Production No. 26 is therefore overruled. BNSF shall produce all documents responsive to the request within fourteen (14) days of entry of this order.

**IT IS THEREFORE ORDERED THAT** Intervenor-Plaintiffs' Motion to Compel Against BNSF Railway Company and National Railroad Passenger Corporation (ECF No. 56) is granted in part and denied in part. The motion is GRANTED with respect to Intervenor-Plaintiffs' Request for Production No. 26 and DENIED with respect to Intervenor-Plaintiffs' Request for Production Nos. 1 and 7 and Interrogatory No. 7. BNSF shall produce all documents responsive to Request No. 26 **within fourteen (14) days from the date of this Memorandum and Order**.

**IT IS FURTHER ORDERED THAT** each party shall bear its own expenses related to this motion.

IT IS SO ORDERED.

Dated December 19, 2016, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

12