IN THE UNITED STATES DISRICT COURT
FOR THE DISTRICT OF KANSAS

NATIONAL RAILROAD PASSENGER CORP.;
BNSF RAILWAY COMPANY,

        Plaintiffs,

and

EVERETT OWEN, *et al.*,

        Intervenor-Plaintiffs,

v.        Case No. 6:16-cv-01094-JTM

CIMARRON CROSSING FEEDERS, LLC,

        Defendant.

**MEMORANDUM AND ORDER**

National Railroad Passenger Corporation (better known as Amtrak) and BNSF Railway brought this suit after an Amtrak passenger train derailed at a highway crossing in Cimarron, Kansas, on March 14, 2016. The complaint alleged that shortly before the accident, employees of defendant Cimarron Crossing Feeders had been loading a grain truck at that company's nearby cattle-feeding facility, when they left the truck unattended, out of gear, and with no brake applied, resulting in the truck rolling downhill and striking and damaging the railroad bed and track where the train subsequently derailed. Plaintiffs asserted a claim for negligence/gross negligence against Cimarron Crossing. Dkt. 1.[1]

---

[1] The court has subject matter jurisdiction because Amtrak is a federally-created corporation in which the United States government owns more than half the capital stock. Dkt. 1 at 1. *See* 28 U.S.C. §§ 1331 and 1349.

A group of passengers from the train subsequently intervened as plaintiffs. Their fifth amended complaint (Dkt. 89) asserts claims not only against Cimarron Crossing, but also against Amtrak and BNSF. Among other things, they assert a claim against Amtrak for attorney's fees pursuant to K.S.A. § 66-176, based in part on Amtrak's alleged status as a "common carrier." Dkt. 89 at 11, ¶¶ 67, 68. Amtrak and BNSF now move for partial judgment on the pleadings as to this claim, arguing attorney's fees are not available because in 2005 the Kansas legislature eliminated railroads from the group of common carriers subject to § 66-176. Dkt. 106 at 5.

**I. Scope of K.S.A. § 66-176.**

A. *Statutory provisions*. Resolution of the current motion turns upon construction of two Kansas statutes: K.S.A. §§ 66-176 and 66-105. The first of these provides in part as follows:

> **66-176. Damages for violations; attorney fees.** Any public utility or common carrier which violates any of the provisions of law for the regulation of public utilities or common carriers shall forfeit … to the person … aggrieved thereby, the actual damages sustained by the party aggrieved, together with the costs of suit and reasonable attorney fees….

The other provision provides as follows:

> **66-105. Common carriers defined.** As used in this act, "common carriers" shall include all freight-line companies, equipment companies, pipe-line companies, and all persons and associations of person, whether incorporated or not, operating such agencies for public use in the conveyance of persons or property within this state.

B. *Rules of construction*. The Kansas Supreme Court recently set forth the following rules for construction of Kansas statutes:

> The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.,* 289 Kan. 605, 607, 214 P.3d 676 (2009). We first attempt to ascertain legislative intent by reading the plain language of the statutes and giving common words their ordinary meanings. *Padron v. Lopez,* 289 Kan. 1089, 1097, 220 P.3d 345 (2009). When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. But when the statute's language or text is unclear or ambiguous, we "employ canons of construction, legislative history, or other background considerations to divine the legislature's intent and construe the statute accordingly." *Stewart Title of the Midwest v. Reece & Nichols Realtors,* 294 Kan. 553, 564–65, 276 P.3d 188 (2012).
>
> However, even if the language of the statute is clear, we must still consider various provisions of an act in pari materia with a view of reconciling and bringing those provisions into workable harmony if possible. *Southwestern Bell Tel. Co. v. Beachner Constr. Co.,* 289 Kan. 1262, 1270, 221 P.3d 588 (2009). Additionally, we must construe statutes to avoid unreasonable or absurd results, and we presume the legislature does not intend to enact useless or meaningless legislation. 289 Kan. at 1269, 221 P.3d 588; *State v. Le,* 260 Kan. 845, 850, 926 P.2d 638 (1996).

*N. Nat. Gas Co. v. ONEOK Field Servs. Co.*, 296 Kan. 906, 918, 296 P.3d 1106, 1115 (2013). The Kansas Supreme Court has also recognized that "[t]echnical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings." *Int'l. Ass'n of Firefighters, Local No. 64 v. City of Kansas City*, 264 Kan. 17, 27, 954 P.2d 1079, 1086 (1998). *See also State v. Taylor*, 27 Kan.App.2d 539, 541, 6 P.3d 441, 443 (2000) ("In the absence of a statutory or common-law definition of this phrase, the court will employ the ordinary meaning of the words used by the legislature.").

C. <u>Discussion</u>. The term "common carrier," both under its ordinary meaning and under the particular meaning of the term at common law, includes a railroad operator which transports the public for a fee. In fact, a railroad is arguably the quintessential

3

common carrier. *See e.g., Kansas Pac. Ry. Co. v. Reynolds*, 8 Kan. 623, 637 (1871) ("Tried by all the definitions in the text-books and approved decisions, railroad companies are common carriers in reference to all property they assume to carry."); 64 *Am.Jur.2d Railroads* § 3 ("A railroad, excepting a purely private railroad, is a common carrier, possessing all the powers, rights, duties, and liabilities of a common carrier."); *Black's Law Dictionary* (20th ed. 2014) (defining "carrier" as "an individual or organization (such as a ship owner, a railroad, or an airline) that contracts to transport passengers or goods for a fee," and a "common carrier" as "[a] commercial enterprise that holds itself out to the public as offering to transport freight or passengers for a fee."). Under the primary test for construing statutes, then, a railroad would be considered a common carrier under § 66-105 and would be liable for attorney fees under § 66-176 upon proof of violation of Kansas provisions regulating common carriers.

Plaintiffs argue a contrary meaning is shown by the Kansas legislature's 2005 amendments to § 66-105 and to other parts of Chapter 66.[2] In 2005, the legislature transferred the KCC's jurisdiction over railroads to the Kansas Department of Transportation. *See* 2005 Kan. Sess. Laws Ch. 21, § 1 ("Except as otherwise provided by law, all of the powers, duties and functions of the state corporation commission as it

---

[2] Chapter 66 of the Kansas Statutes is entitled "Public Utilities." It contains over twenty articles regulating various types of public utilities, including electric and gas companies, railroad companies, motor carriers, telecommunications, and nuclear generating facilities. Article 1, which is entitled "Powers of State Corporation Commission," primarily clarifies which utilities are subject to the jurisdiction of the Kansas Corporation Commission (KCC), describes the KCC's authority, and adopts various standards, regulations and procedures. Article 2 is entitled "Duties and Liabilities of Railroad Companies." Article 3 is entitled "Duties and Liabilities of Railroads and Other Carriers." A large number of the provisions originally in Articles 2 and 3 have since been repealed by the Kansas legislature; most of these provisions were repealed by the 2005 amendments referred to above.

relates to railroads are hereby transferred to and imposed upon the Kansas department of transportation."). These amendments included the striking of numerous references to "railroad companies" in Article 1 of Chapter 66, which is devoted primarily to the jurisdiction and powers of the KCC. As part of that overhaul, the legislature amended the definition of common carrier in § 66-105 to strike out "railroad companies, express companies, street railroads, suburban or interurban railroads, [and] sleeping-car companies," all of which were previously included in the statutory definition. While at first glance this seems to be a clear indication of the legislature's intent to exclude railroads from the "common carriers" subject to § 66-105, that inference is undermined by several contrary indications.

First and foremost, the meaning of a statute must be derived primarily from the words used by the legislature. A reader of amended § 66-105 would still reasonably conclude from its terms that railroads fall within its coverage, as it concerns "common carriers," a term that has been synonymous with railroads for well over a century. The court notes that in the same set of 2005 amendments, the legislature defined "railroad company" in Article 2 to mean (in part) "any incorporated railroad company, express or transportation company, [or] *other common carrier*" that constructs or operates a railroad line. K.S.A. § 66-2,123. This amendment implicitly recognizes that railroads are common carriers.

Second, the definition in § 66-105 is inclusive rather than exclusive. It says the term "'common carriers' *shall include*" the types of companies listed. It does not say the term *means the following*, nor does it say it includes *only* the types of companies listed. By

5

its plain terms, the definition is non-exclusive. *See e.g., Peterson v. City of Minneapolis*, 878 N.W.2d 521, 524 (Minn. Ct. App. 2016) ("we will not apply [*expressio unius est exclusio alterius*] here because of the introductory word, 'including,' which by definition is not exclusive."). By contrast, as indicated above, when the legislature inserted a new definition into Article 2, it stated that the term "'railroad company' *means* and shall include any incorporated railway company" and other entities. Unlike § 66-105, the latter definition could be construed as limiting the meaning of the term to the items specifically listed. *See* 2A Norman & Shambie Singer, *Sutherland Statutory Construction* § 47:7 at 310 (7th ed. 2014) ("The word 'includes' is usually a term of enlargement, and not of limitation. It therefore conveys the conclusion that there are other items includable, though not specifically enumerated. Conversely, a definition which declares what a term 'means' usually excludes any meaning not stated.") [internal quotation marks and punctuation omitted]. *See also* K.S.A. § 66-104 ("The term 'public utility,' as used in this act, *shall be construed to mean*" persons engaging in various specified activities).

Finally, the legislature knew perfectly well how to exclude particular entities from the scope of § 66-105, as it did with respect to gas gathering systems. *See* K.S.A. § 66-105a ("The term 'public utility' as used in K.S.A. 66-104, … and the term 'common carriers' as used in K.S.A. 66-105, … shall not include any gas gathering system…."). *See also* K.S.A. § 66-104(d) ("The term 'public utility' shall not include any activity of an otherwise jurisdictional corporation … as to the marketing or sale of compressed natural gas for end use as motor vehicle fuel."). Yet the legislature chose not to do so

6

with railroads, and at the same time it spoke of railroads and "other common carriers." All of the foregoing factors weigh against plaintiffs' argument that these statutes evince a clear legislative intent to exclude railroads from "common carriers" under § 66-105. It is true, as Amtrak and BNSF point out, that certain specific provisions in Article 2 provide for an award of attorney fees, which is arguably inconsistent with the general provision in § 66-176. But in the face of such contradictory or ambiguous inferences, the court must resort to the plain meaning of the terms used by the legislature. *Cf. Bd. of Comm'rs of Edwards Cty. v. Simmons*, 159 Kan. 41, 151 P.2d 960, 967–68 (1944) (the regulatory definitions "were obviously incorporated for convenience and clarity in connection with regulations separately applicable to common carriers and to other public utilities. In the absence of expressed intention otherwise it must be assumed that the legislature here used the term 'public utility corporation' in its broad and general meaning.").

Plaintiffs also contend that § 66-176, which is part of Article 1, can only be applied to violations of Article 1 and can never be applied to violation of a regulatory duty imposed by Article 2. Dkt. 106 at 7.[3] The court rejects that argument as well, as it likewise founders on the plain meaning of the words used. Section 66-176 applies when a common carrier violates "*any* of the provisions of law for the regulation of public

---

[3] In their reply brief, Amtrak and BNSF complain that intervenors have alleged federal regulatory violations, and they argue that attorney fees cannot be awarded for such violations. Dkt. 143 at 12. This issue was not raised in the initial motion for judgment (Dkts. 5, 6) and the court will not consider an argument raised for the first time in a reply brief. Similarly, the court does not consider whether intervenors have adequately pleaded an Article 2 regulatory violation in their complaint, as the motion for judgment challenged only whether § 66-176 was limited as a matter of law to regulatory violations of Article 1. Dkt. 106 at 7.

utilities or common carriers." Both Article 1 and Article 2 include regulations applicable to common carriers. The only definition of "common carriers" appears in Article 1; there is no separate definition in Article 2. The common carrier definition (66-105) applies "as used in this act," but "this act" is not otherwise defined or limited. Articles 1 and 2 are both part of Chapter 66's regulation of public utilities and both were amended in the 2005 restructuring. Nothing in Article 1 or Article 2 refers to a separate "act" or contains a separate short title. All of this implies that the definition of common carriers and the attorney fee provision from Article 1 apply to Article 2 violations by a common carrier.

Plaintiffs urge the court to draw a contrary inference from the absence of cases applying § 66-176 to Article 2 and from the overall structure of the public utility provisions. But there is no compelling indication of legislative intent sufficient to overcome the plain meaning of the words used. Section 66-176 applies when a common carrier violates "any of the provisions of law for the regulation of … common carriers." There is no express limitation to Article 1, despite the fact that the legislature knows how to limit application of its definitions (*see e.g.*, K.S.A. § 66-2101 ("As used in K.S.A. 66-2101 through K.S.A. 66-2106, … the following words and phrases have the following meanings")) and how to indicate that a specific article is to be considered a separate act (*e.g.*, K.S.A. 66-1801 ("This act shall be known and may be cited as the Kansas underground utility damage prevention act")).

The court readily concedes a legislative intent is evident from the 2005 amendments to transfer administrative jurisdiction over railroads from the KCC to the

8

Department of Transportation. But beyond that, it is unclear what the legislature intended with respect to application of § 66-105 and § 66-176. The Kansas courts have previously said § 66-176 was "intended to create … an individual right of action against the common carrier." *Dietz v. Atchison, Topeka & Santa Fe Ry. Co.*, 16 Kan.App.2d 342, 347, 823 P.2d 810, 815 (1991). That individual right "is in addition to the potential imposition of other" - *i.e.* administrative – "penalties." *Id*. The court sees no evidence that the legislature intended to abrogate that individual right with respect to railroads, but to preserve it for violations by all other common carriers and public utilities.

A court "must first attempt to ascertain the legislative intent through the statutory language, giving common words their ordinary meanings." *Ullery v. Orthick*, 304 Kan. 405, 409, 372 P.3d 1135, 1138 (2016) (*quoting State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010)). The ordinary meaning of the terms in § 66-105 and § 66-176 compel rejection of plaintiffs' argument that the intervenor-plaintiffs cannot possibly be entitled to relief under § 66-176.

**IT IS THEREFORE ORDERED** this 29th day of March, 2017, that Amtrak and BNSF's Motion for Partial Judgment on the Pleadings (Dkt. 105) is DENIED.

                                                ___s/ J. Thomas Marten_____
                                                J. THOMAS MARTEN, JUDGE