| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORP. and BNSF RAILWAY COMPANY, | ) ) ) |
| Plaintiffs, | ) |
| and | ) ) |
| EVERETT OWEN, et al., | ) ) |
| Intervenor-Plaintiffs, | ) |
| v. | )   Case No. 16-cv-1094-JTM-TJJ |
| | ) |
| CIMARRON CROSSING FEEDERS, LLC, | ) ) |
| Defendant, | ) |
| and | ) ) |
| NATIONAL RAILROAD PASSENGER CORP. d/b/a AMTRAK; and BNSF RAILWAY COMPANY, | ) ) ) |
| | ) |
| Defendants and Intervenor-Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion for Protective Order and/or Motion to Limit Discovery Regarding Intervenor-Plaintiffs' Notice of Video Deposition Duces Tecum of Corporate Designee(s) (ECF No. 206) ("Motion for Protective Order and/or to Limit Discovery") filed by Plaintiffs National Railroad Passenger Corporation ("Amtrak") and BNSF Railway Company ("BNSF") (jointly "Railroad Plaintiffs"). As set forth below, the motion is granted in part and denied in part.

# I. FACTS RELEVANT TO THE DEPOSITION TOPICS AND DOCUMENT REQUESTS AT ISSUE[1]

On July 12, 2017, Intervenor-Plaintiffs served identical notices of Rule 30(b)(6) video depositions on Amtrak and BNSF ("Notices").[2] The Notices set out thirteen areas of inquiry ("Topics") and eight requests for production of documents ("Requests") primarily concerning the Southwest Chief Route Improvement Project ("Southwest Chief Project").[3] In response, on July 24, 2917, Railroad Plaintiffs timely filed their Motion for Protective Order and/or to Limit Discovery.

The Southwest Chief Project is a reference to the 2014 grant application by the City of Garden City, Kansas for United States Department of Transportation funds through a program known as the Transportation Investment Generating Economic Recovery Discretionary Grant Program ("TIGER"). The funds were to be used for track improvements to the La Junta Subdivision, which is the section of BNSF track between Hutchinson, Kansas and Las Animas, Colorado. Garden City was a necessary sponsor of the application because private organizations, such as BNSF and Amtrak, cannot apply for TIGER grant funds. Garden City's TIGER grant application was prepared by the Seneca Group, LLC, a Washington, D.C. consulting firm which claims that the "[a]pplication preparation was performed in close cooperation with project stakeholders including state DOT's, Amtrak and the BNSF Railway."[4]

---

[1] For a more detailed discussion of the facts, see the Court's December 19, 2016 Memorandum & Order (ECF No. 82). *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-CV-1094-JTM-TJJ, 2016 WL 7336409, at *1 (D. Kan. Dec. 19, 2016).

[2] *See* Certificate of Service, ECF No. 202.

[3] *See* Notice of Video Dep. Duces Tecum of Corporate Designee(s) for BNSF, ECF No. 206-2.

[4] Ex. A to Intervenor-Pls.' Resp, ECF No. 208-1.

## II.        OBJECTIONS TO THE DEPOSITION TOPICS AND DOCUMENT REQUESTS

Railroad Plaintiffs make several arguments in support of their request for a protective order prohibiting discovery into, or alternatively limiting, the deposition Topics and Requests set out in Intervenor-Plaintiffs' Notices. They argue that Intervenor-Plaintiffs should not be permitted to ask deposition questions or obtain documents related to track safety, speed, conditions, and inspection activities because those Topics and Requests are regulated by and preempted by federal law. They also argue that deposition questions and document requests regarding the 2014 TIGER grant application are irrelevant, excessively broad, unduly burdensome, and not proportional to the needs of the case. They further set out their specific objections to each enumerated Topic and Request. Finally, they object to the Intervenor-Plaintiffs' stated intent to live internet stream the depositions.

### A.        Global Federal Preemption Objections to Discovery

Railroad Plaintiffs assert a global federal preemption objection to all the deposition Topics and Requests pertaining to track safety, speed, conditions, and inspection activities. Under the Federal Railroad Safety Act ("FRSA"), laws, regulations, and orders related to railroad safety are to be "nationally uniform to the extent practicable."[5] Therefore, Railroad Plaintiffs argue a duty under state law is preempted if the Secretary of Transportation, acting through the Federal Railroad Administration ("FRA"), has issued a regulation that covers the claim being asserted under state law.  Railroad Plaintiffs contend the FRA found that they were in compliance with the FRA Track Safety Standards imposed by the FRA in 49 C.F.R § 213.1, *et. seq*., and therefore Intervenor-Plaintiffs' claims pertaining to track safety, speed, or other conditions covered in those sections are preempted by federal law.  They argue the Court should

---

[5] 49 U.S.C. § 20106(a)(1).

therefore prohibit discovery on Topics and Requests seeking testimony regarding track safety, speed, conditions, and inspection activities.

Intervenor-Plaintiffs argue that federal preemption is not an appropriate objection for refusing to produce corporate representatives for deposition. This is because prohibiting discovery based on an assumption that Railroad Plaintiffs will be successful in establishing federal preemption as an affirmative defense is premature and not appropriate at the discovery stage. Intervenor-Plaintiffs claim they have alleged in their complaint that the Railroad Plaintiffs were negligent in failing to comply with federal standards of care established by federal regulations and Railroad Plaintiffs' own internal rules created pursuant to such regulation. In support of their argument, Intervenor-Plaintiffs state that in 2007, Congress amended 49 U.S.C. § 20106(b) to clarify that the FRSA can no longer be used to shield railroads from liability for harm resulting from violations of FRA standards, applicable state law, and internal railroad operating rules.

The Court finds the asserted federal preemption objections to discovery are premature and unsupported. Railroad Plaintiffs cite no cases in which a court prohibited or limited discovery based on a similar preemption argument. Railroad Plaintiffs argue that state law duties having to do with railroad safety are subject to federal preemption, but Intervenor-Plaintiffs have alleged BNSF was negligent in failing to comply with *federal* standards of care established by federal regulations, 49 C.F.R. 213 *et seq.*, and internal rules created pursuant to such regulations.[6] Intervenor-Plaintiffs have also cited statutory authority that provides "clarification regarding state law causes of action," 49 U.S.C. § 20106(b), which supports their argument against federal preemption here. In any event, Intervenor-Plaintiffs are not required to show that

---

[6] Fifth Am. Complt. in Intervention ¶¶ 71–72, ECF No. 89.

they will ultimately prevail on Railroad Plaintiffs' federal preemption argument in order to request and obtain relevant discovery on track conditions and inspection activities. Railroad Plaintiffs' federal preemption objections to the deposition Topics and Requests are overruled.

## B.    Objections to Specific Topics

Before addressing Railroad Plaintiffs' objections to specific Topics and Requests, the Court sets out the relevant Rules applicable to its rulings.

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

When a party seeks to depose an organization, Rule 30(b)(6) requires that the deposition notice "describe with reasonable particularity the matters for examination." This means the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.[7] If the deponent "cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible."[8]

Rule 34(b)(1)(A) likewise requires that a request for production "must describe with reasonable particularity each item or category of items to be inspected." Though what qualifies as "reasonabl[y] particular" depends at least in part on the circumstances of each case, a

---

[7] *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006); *E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 421, 426 (D. Kan. 2007).

[8] *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

discovery request should be sufficiently definite and limited in scope that it can be said "to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced."[9]

The party objecting to discovery bears the burden to support its objections.[10]

### 1. Topic 1 (Southwest Chief Project support)

Topic 1 for Amtrak's Rule 30(b)(6) deposition seeks testimony on the "support" *Amtrak* provided to Seneca, BNSF, The Kansas Department of Transportation ("KDOT"), and/or Garden City for the Southwest Chief Project. Likewise, Topic 1 for BNSF's Rule 30(b)(6) deposition seeks testimony on the "support" *BNSF* provided to Seneca, Amtrak, KDOT, and/or Garden City for the Southwest Chief Project. Railroad Plaintiffs objected that Topic 1 is

> not described with reasonable particularity as required by Rule 30 (b)(6), is not properly limited in scope and is not proportional to the needs of this case. The topic does not define or provide any guidance concerning what Intervenor-Plaintiffs intend to inquire about the 'support,' if any, BNSF or Amtrak provided to the entities identified in the topic.

Railroad Plaintiffs' objections to Topic 1 are sustained. First, the Court agrees that Topic 1 is not stated with reasonable particularity. The lone term "support" without more limiting language is too imprecise and, even applying a dictionary, common-sense definition of the word, leaves too much ambiguity. "Support" could mean financial support, documentary support, administrative support, staffing support, political support, or a host of other types of "support." Second, Topic 1 is not properly limited in scope or proportional to the needs of the case, as the Southwest Chief Project includes many miles of railroad track not relevant to this case.

---

[9] *Regan–Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008) (quoting 8A Wright & Miller, Federal Practice & Procedure § 2211).

[10] *McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 686 (D. Kan. 2000).

Additionally, Intervenor-Plaintiffs have not shown the relevance of support provided to all four of the listed entities as it relates to the section of track at issue. Railroad Plaintiffs' request for a protective order precluding deposition questioning on Topic 1 is granted.

      **2.**    **Topics 2, 3, and 10 (Southwest Chief Project employees and documents)**

Topic 2 requests a corporate designee to provide testimony on the identification of the BNSF [Amtrak] employees who were involved in the Southwest Chief Project application process. Topic 3 similarly seeks identification of any persons BNSF [Amtrak ]worked with at Seneca, Amtrak, KDOT and Garden City on the Southwest Chief Project. Topic 10 requests identification of "any and all documents related to" the Southwest Chief Project.

Railroad Plaintiffs object to these Topics as already provided in discovery and specifically refer to an interrogatory sent by Defendant Cimarron to the Railroad Plaintiffs asking for the identity of each employee or agent that assisted with or provided information concerning the project. Railroad Plaintiffs thus claim they have already responded to this inquiry and there is no need to impose the cost and expense for them to produce a corporate representative to supply information previously provided.

Intervenor-Plaintiffs argue that Railroad Plaintiffs' production of some documentation concerning their involvement in the TIGER grant process does not relieve them of the duty to produce a prepared corporate designee to testify to the topics and provide corporate interpretation of the documents and subjective beliefs and positions.

The Court has reviewed the referenced prior interrogatory answers in Exhibits C and D and finds they do not fully address the Topics.[11] Exhibit C is BNSF's interrogatory response and Exhibit D is Amtrak's interrogatory response to Cimarron Interrogatory 14, which asks BSNF or Amtrak to identify employees who assisted, prepared, or provided information or records to Garden City or anyone acting on its behalf in connection with the TIGER grant application. A comparison of the interrogatories to Topics 2 and 3 shows that the Topics are broader in scope than the interrogatories. The Court also finds the fact that Railroad Plaintiffs have already provided information through other written discovery to Intervenor-Plaintiffs concerning a particular deposition topic does not, in itself, make that topic an impermissible subject of a 30(b)(6) deposition.[12] While a Rule 30(b)(6) deposition topic must be "reasonably particular" and cannot be "unreasonably cumulative or duplicative,"[13] a deposition by its very nature and purpose permits a broader and more flexible range of questions than interrogatories and requests for production, and may be used to elicit explanations or additional information regarding answers to interrogatories or other discovery responses.

The Court finds that the testimony Intervenor-Plaintiffs seek would not be unreasonably cumulative or duplicative and that the likely benefit of the testimony on these Topics outweighs any burden or expense the deposition might impose. Railroad Plaintiffs' objections to these

---

[11] *See In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2009 WL 5064441, at *3 (D. Kan. Dec. 16, 2009) (finding duplicative and cumulative objections to Rule 30(b)(6) deposition unsupported and conclusory based upon objecting party's failure to present "any specific examples of written discovery that have fully addressed topics listed on the deposition notice").

[12] *White v. Union Pac. R. Co.*, No. 09-1407-EFM-KGG, 2011 WL 721550, at *4 (D. Kan. Feb. 22, 2011), clarified on denial of reconsideration, 2011 WL 1361589 (D. Kan. Apr. 11, 2011) (quoting *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 126 (D.D.C. 2005)).

[13] Fed. R. Civ. P. 26(b)(2)(C)(i).

Topics are overruled. Railroad Plaintiffs' request for a protective order precluding deposition questioning on Topics 2, 3 and 10 is denied.

### 3. Topic 4 (Southwest Chief Commission)

Topic 4 requests testimony regarding "[t]he rol[e] of the Southwest Chief Commission and the identification of all members of the Southwest Chief Commission that BNSF [or Amtrak] worked with." Railroad Plaintiffs object to this topic as entirely irrelevant and not proportional to the needs of the case. They explain that the Southwest Chief Commission is a commission established by the State of Colorado Department of Transportation to address the continuing existing Southwest Chief line in the State of Colorado and expansion of the line to include a stop in Pueblo, Colorado. Obviously, the derailment at issue here occurred in Cimarron, Kansas and does not involve track in the State of Colorado.

The Court sustains the objection to Topic 4. Based on Railroad Plaintiffs' description of the Southwest Chief Commission, the request does not appear relevant. Intervenor-Plaintiffs do not rebut the argument in their response. Railroad Plaintiffs' request for a protective order precluding deposition questioning on Topic 4 is granted.

### 4. Topics 5 and 11 ( History and projects with Seneca)

Topics 5 and 11 seek a corporate designee to testify regarding "[t]he history of BSNF's [Amtrak's] involvement with Seneca," and "[i]dentification of other projects BNSF [Amtrak] has worked on with Seneca and/or BNSF." Railroad Plaintiffs object that these Topics are not described with reasonable particularity, not properly limited in scope, and not proportional to the needs of this case. They assert that these Topics seek in very broad fashion to conduct deposition questioning about any involvement Railroad Plaintiffs have had with Seneca at any time.

The Court sustains the reasonable particularity and not-properly-limited objections to Topics 5 and 11. The Topics contain no limitation either by time period or specific project(s) on which BNSF or Amtrak worked with Seneca. As such, Railroad Plaintiffs cannot identify the outer limits of the topics for a compliant designation. Railroad Plaintiffs' request for a protective order precluding deposition questioning on Topics 5 and 11 is granted.

### 5. Topic 6 (Seneca documents)

Topic 6 to BNSF asks for identification of "all documents received from Seneca and/or Amtrak in BNSF's preparation" for the Southwest Chief Project application. Topic 6 to Amtrak seeks the identification of all documents" received from Seneca and/or BNSF in Amtrak's preparation" for the Southwest Chief Project. Railroad Plaintiffs object generally to this topic or to providing a corporate representative concerning the Topic because this information has already been provided in discovery, including specifically production of the documents supplied in preparation for the Southwest Chief Project and answers to interrogatories identifying these documents.

The objections are overruled. Although Railroad Plaintiffs may have produced some documents related to the Southwest Chief Project, many of their responses have conditional objections making it unclear to what extent Railroad Plaintiffs have already identified all documents received from Seneca and/or each other in preparing for the Southwest Chief Project. Railroad Plaintiffs' request for a protective order precluding deposition questioning on Topic 6 is denied.

### 6. Topic 7 (Project Narrative drafts)

Topic 7 seeks testimony regarding "[d]iscussion of drafts of the Project Narrative" for Southwest Chief Project, "attached as Exhibit A-1." Topic 7 further states "[t]his discussion includes, but is not limited to all statements made in the Project Narrative for the Southwest Chief Project." Railroad Plaintiffs object to this topic on grounds that it is overly broad, fails to describe the topic with reasonably particularity, and otherwise seeks irrelevant information not proportional to the needs of the case. They further object:

> to the portion of this topic that purports to require the deponent to be prepared to discuss all "statements" made in the project narrative for the Southwest Chief Route Improvement Project. The project narrative covers matters such as the history of the train route, transportation challenges, economic effects of the route, the makeup of the rail on the entire subdivision from Hutchison, Kansas to Las Animas, Colorado (i.e., area of track not at issue), speed restrictions along the entire route, a discussion of selection criteria applicable to the TIGER grant including economic impacts, operating costs, job creation, employment, quality of life, environmental sustainability, and other planning issues that have absolutely no relevance to any issues in this case. The Notice proposes to require [Railroad] Plaintiffs to be prepared to address all of these subjects.

The Court sustains the overly broad objection, as well as the objection that Topic 7 is not described with reasonable particularity. Railroad Plaintiffs' remaining objections are overruled to the limited extent of the condition, repair, and maintenance of the track in the vicinity of the derailment. Accordingly, the Court grants in part Railroad Plaintiffs' request for a protective order limiting Topic 7 as follows. Topic 7 shall be limited to statements made in the Project Narrative for the Southwest Chief Project concerning the condition, repair, and maintenance of the track in the vicinity of the derailment, which the Court defines here (as it has previously) as

"five (5) miles on either side of the damaged track at the train derailment site (Milepost 373.07)."[14]

### 7.    Topic 8 (Seneca correspondence)

Topic 8 requests that Railroad Plaintiffs produce corporate representatives to identify "all correspondence with Seneca, Amtrak [BNSF], KDOT and/or Garden City for application preparation" for the Southwest Chief Project.  Railroad Plaintiffs object that this topic is not described with reasonable particularity, not properly limited in scope, and not proportional to the needs of this case. They further assert they have responded to written discovery on this Topic.

The Court sustains Railroad Plaintiffs' reasonable particularity and not properly limited in scope objections to Topic 8.  The Court finds the Topic is not described with reasonable particularity because it seeks "all" correspondence, without limitation as to time or subject, between multiple entities about a project that covers many miles of railroad track not at issue in this case. Railroad Plaintiffs' request for a protective order precluding deposition questioning on Topic 8 is granted.

### 8.    Topic 9 (How Railroad Plaintiffs identified and targeted locations)

Topic 9 seeks deposition testimony on how Railroad Plaintiffs "identified and targeted locations with the most urgent needs for improvements to prevent additional deterioration of service in the immediate future."  Railroad Plaintiffs object to this Topic on grounds that it is overly broad, not reasonably limited in scope, and seeks information that is irrelevant and not proportional to the needs of the case. They further state that this topic should be limited to discussion of the specific area of trackage at issue in this action.

---

[14] *See* ECF Nos. 52 and 59 ("the La Junta Subdivision from milepost 378.07 to milepost 368.07").

The objections are overruled. The topic is relevant and is not overly broad, because it asks about the process of "how" BNSF and Amtrak identify and target locations and is not asking them to identify the urgent locations. Railroad Plaintiffs' request for a protective order precluding deposition questioning on Topic 9 is denied.

### 9.    Topic 12 (Items reviewed for depositions)

Topic 12 seeks testimony identifying "all items reviewed in preparation for [the Rule 30(b)(6)] deposition." Railroad Plaintiffs object to the Topic as vague, ambiguous, not reasonably particular, and seeking information that is not relevant or proportional to the needs of the case. Further, they object that this Topic is facially overly broad and unduly burdensome as it fails to contain any temporal or scope limitations. Lastly, they contend this Topic seeks production of information protected from the consulting expert, attorney-client and work product privileges.

The Court overrules Railroad Plaintiffs' objections to Topic 12. The Court finds Railroad Plaintiffs have not met their burden to show Topic 12 is vague, ambiguous, facially overly broad, or unduly burdensome, or not described with reasonable particularity. The Court notes that this deposition question has been the subject of several cases in this district, albeit in the context of whether the requested identification of documents reviewed before the deposition was not discoverable as attorney work product.[15] In Magistrate Judge Bostwick's opinion, *Northern Natural Gas Co. v. Approximately 9117.53 acres in Pratt, Kingman, & Reno Counties, Kansas*,[16] he gathered numerous federal court cases from the District of Kansas on the issue of whether an

---

[15] *N. Nat. Gas Co. v. Approximately 9117.53 acres in Pratt, Kingman, & Reno Ctys., Kan.*, 289 F.R.D. 644, 647–48 (D. Kan. 2013) (citations omitted).

[16] 289 F.R.D. at 647.

attorney's selection of documents shown to a witnesses to prepare that witness for deposition or trial testimony are protected work product of an attorney, and whether those documents must be identified or produced during the testimony of the witness. He ultimately "agree[d] with the two district judges and three magistrate judges from this district who have analyzed this issue and determined that the attorney's selection process does not result in material protected by the work product doctrine."[17]  The Court notes that it is not unusual for attorneys to ask deponents what they have reviewed in preparation for their deposition. Railroad Plaintiffs' request for a protective order precluding deposition questioning on Topic 12 is denied.

### 10.    Topic 13 (Incorporation of documents identified in Requests)

Topic 13 asks Railroad Plaintiffs to provide a corporate designee who will testify as to "[a]ll items requested [in the document requests] below . . . , whether or not they are produced." Railroad Plaintiffs object to this Topic as vague, ambiguous, facially overly broad, unduly burdensome, not reasonably particular, and as seeking information that is not relevant or proportional. Railroad Plaintiffs also object to Topic 13 because it does not state what topics or areas of inquiry will be made into the materials requested in response to Exhibit A and therefore it is impossible to prepare a witness to address any such topic. They also contend this Topic is a catch-all topic that is improper in light of the reasonable particularity requirement of Rule 30(b)(6).

The Court sustains the overly broad objection to Topic 13. The Court further sustains the objection that Topic 13 fails to describe the matters for examination with reasonable particularity

---

[17] *Id.* at 648.

as required by Rule 30(b)(6). Railroad Plaintiffs' request for a protective order precluding deposition questioning on Topic 13 is granted.

### C. Objections to Specific Requests

#### 1. Requests 1 and 2 (Southwest Chief Project Projective Narrative, appendices, and application)

Intervenor-Plaintiffs also served eight document requests along with their deposition Notice. Requests 1 and 2 ask Railroad Plaintiffs to produce all drafts, including the final of the Project Narrative, all appendices, and final application, for the Southwest Chief Project.

Railroad Plaintiffs object to Requests 1 and 2, claiming they have already responded to written discovery concerning the materials provided for the Southwest Chief Project. They further state that they will provide information that was marked confidential if the parties will agree to a protective order for the proprietary information.

The Court overrules Railroad Plaintiffs' objection that they have already responded to written discovery concerning materials provided for the Southwest Chief Project. Neither Intervenor-Plaintiffs, nor the Court can ascertain from this response whether the prior discovery responses are cumulative and duplicative of information and documents being requested by Requests 1 and 2. Mere statements that a party has "already responded," without providing more information such as a reference to the particular prior discovery response or Bates stamp reference, does not suffice as justification for not producing documents responsive to the current Requests. Even though the Court overrules Railroad Plaintiffs' objection, Railroad Plaintiffs are not required to re-produce responsive documents that they have already produced, rather they may simply identify such documents by Bates stamp numbers or other identifier.

Railroad Plaintiffs' request for a protective order as to Requests 1 and 2 is denied, except to the extent Railroad Plaintiffs claim responsive documents are confidential. Any such confidential documents shall be produced either pursuant to a protective order already entered in the case or a newly entered protective order.

### 2.    Request 3 (Southwest Chief Project correspondence)

Request 3 seeks "[a]ll correspondence, including email, between BNSF [Amtrak] and Seneca, Amtrak [BNSF], KDOT and/or Garden City" regarding the Southwest Chief Project. Railroad Plaintiffs object that Request 3 is not described with reasonable particularity, properly limited in scope, and proportional to the needs of this case. They also state they have responded to written discovery concerning this subject and refer to Exhibits C and D, which are excerpts from Railroad Plaintiffs' prior discovery answers and responses.

The Court has reviewed the excerpted discovery answers and responses highlighted by Railroad Plaintiffs. From that review, it is impossible to determine whether Railroad Plaintiffs' prior production of documents and information was fully responsive to Request 3.  None of the referenced prior discovery interrogatories or requests for production are identical to Request 3. In addition, Railroad Plaintiffs asserted conditional objections and other reasons (e.g., seeking a confidentiality protective order) for not fully answering or producing responsive documents. Railroad Plaintiffs thus have not shown that they have produced all documents responsive to Request 3. Railroad Plaintiffs shall produce responsive documents so that Intervenor-Plaintiffs can depose a corporate representative about the documents. This ruling, however, does not require Railroad Plaintiffs to re-produce responsive documents previously produced in this case. They may instead provide a list identifying all responsive documents (by Bates stamp number or other identifier) previously produced, and then produce any remaining responsive documents.

The Court also overrules the Railroad Plaintiffs' objection that Request 3 is not described with reasonable particularity, but sustains the objection that the Request is not properly limited in scope or proportional to the needs of the case. The Court agrees that the request for correspondence regarding the Southwest Chief Project between BNSF and multiple other entities should be limited to the vicinity of the derailment location. The Court therefore grants Railroad Plaintiffs' request for protective order limiting the scope of the discovery sought by Request 3 to the vicinity of the derailment location, which the Court again defines as "five (5) miles on either side of the damaged track at the derailment site (Milepost 373.07)."

### 3. Requests 4 and 5 (Southwest Chief Project documents received and reviewed)

Requests 4 and 5 seek production of "[a]ll documents received from BNSF [Amtrak] or Seneca relating to" and "[a]ll documents reviewed in preparation of the application for" the Southwest Chief Project. Railroad Plaintiffs object:

> generally to this item or providing a corporate representative to testify concerning the topic because this information has already been provided in discovery. Amtrak and BNSF have already provided the documents supplied in preparation for the Southwest Chief Improvement Project and answered interrogatories identifying these documents. See Ex. C and D.

Again, the Court finds Railroad Plaintiffs have not shown that they have produced all documents responsive to Requests 4 and 5. The most similar, but not identical, prior requests for production is Intervenor-Plaintiffs' First RFP 5, which sought "documentation submitted to, or relied upon for" the Southwest Chief Project.[18] While there are likely documents that are responsive to multiple discovery requests, Railroad Plaintiffs have not shown that they have produced all documents responsive to Requests 4 and 5. The Court overrules the Railroad

---

[18] Ex. C at 16, ECF No. 206-4; Ex. D at 12, ECF No. 206-5.

Plaintiffs' objection that they have already responded to written discovery on this subject. [19]

Railroad Plaintiffs' request for a protective order as to Requests 4 and 5 is denied.

### 4. Request 6 (Seneca spreadsheet)

Request 6 asks for "[t]he spreadsheet co-created by Seneca to coordinate lobbying effects." Railroad Plaintiffs object that Request 6 seeks information that is not relevant and proportional to the needs of the case.

The objections are sustained. A spreadsheet that Railroad Plaintiffs may have co-created with Seneca to generically "coordinate lobbying effects" with no further limitation is not relevant on its face to the issues in this case. Intervenor-Plaintiffs have not come forward in their Response with any additional explanation of the relevancy of the requested spreadsheet. Railroad Plaintiffs' request for a protective order precluding them from responding to Request 6 is granted.

### 5. Request 7 (Southwest Chief Commission correspondence)

Request 7 asks Railroad Plaintiffs to produce "[a]ll correspondence between [Railroad Plaintiffs] and any member of the Southwest Chief Commission." Railroad Plaintiffs object to this Request because it is "entirely irrelevant and not proportional to the needs of the case." They further explain:

> The Southwest Chief Commission is a commission established by the State of Colorado Department of Transportation to address the continuing existing Southwest Chief line in the State of Colorado and expansion of the line to include a stop in Pueblo, Colorado. . . . Obviously, the derailment at issue here occurred in Cimarron, Kansas and does not in any way, shape or form involve any trackage in the State of Colorado.

---

[19] Railroad Plaintiffs may identify previously produced responsive documents by Bates stamp number or other identifier rather than re-producing them.

Based upon the Railroad Plaintiffs' description of the Southwest Chief Commission as established by the State of Colorado to address a section of track in Colorado, the Court agrees that this Request does not appear to seek relevant discovery in this case where the derailment occurred in Kansas. Intervenor-Plaintiffs have not otherwise provided in their Response any argument for the relevancy of the correspondence sought by this Request. The relevancy objection is therefore sustained. Railroad Plaintiffs' request for a protective order precluding them from responding to Request 7 is granted.

### 6. Request 8 (Federal funding programs)

Request 8 seeks "[a]ll documents describing the federal program(s) used by [Railroad Plaintiffs] in obtaining funding." Railroad Plaintiffs object that Request 8 is not described with reasonable particularity and is very general, vague and ambiguous in its reference to" federal program(s)" used to obtain funding. They also object to the relevancy of this Request to this lawsuit.

The Court sustains all the objections to this Request. It fails to describe the requested discovery with "reasonable particularity" by its generic and unlimited reference to "federal program(s)" used by Railroad Plaintiffs to obtain funding. The request is especially objectionable in that it is not even limited to federal funding relating to track improvements or any track location that may arguably have some relevance to the claims in this lawsuit. Railroad Plaintiffs' request for a protective order with regard to Request 8 is granted.

### D. Objection to Live Internet Streaming of the Depositions

Railroad Plaintiffs object to the depositions being conducted "using instant visual display and live internet feed to allow viewing of the deposition questions and answers by other counsel,

legal assistants, consultants and/or potential expert witnesses." Railroad Plaintiffs argue this highly unusual deposition condition directly contradicts this Court's official Deposition Guidelines, specifically Guideline 4 governing "Attendance," which does not include "expert witnesses" and "professional consultants."

Intervenor-Plaintiffs maintain that live internet streaming is permitted by the Federal Rules of Civil Procedure and allowing retained experts to listen to live deposition testimony is consistent with the intent of the rules. They argue that Railroad Plaintiffs bear the burden to show good cause that a protective order is necessary, but Railroad Plaintiffs have failed to show how allowing retained experts to monitor the depositions would unfairly prejudice them.

Federal Rule of Civil Procedure 30 does not address the video or audio live streaming of a deposition. Nor do the District of Kansas Deposition Guidelines mention live streaming of a deposition. Thus, the Federal Rules and local guidelines neither expressly permit nor prohibit the video or audio live streaming of a deposition. Railroad Plaintiffs, however, are correct that the Court's Deposition Guidelines specifically identify who may be present at a deposition and, for example, expert witnesses or consultants are not listed.

Although not raised by the parties, the Court has a number of significant concerns regarding the proposed live streaming of the depositions. The Court has concerns with the difficulty in identifying and limiting who is viewing the live stream depositions, which is inconsistent with the District of Kansas Deposition Guidelines' restrictions on who may attend a deposition (absent the agreement of counsel). The Court also has concerns with regard to the potential for unauthorized viewing and recording of the live streaming depositions, and the risk that remote viewers could communicate with those present at the depositions, such as providing follow-up questions or research, unbeknownst to other counsel attending the depositions. Other

concerns include the risk of remote viewers viewing or hearing confidential information or off-record discussions that would not be visible or audible on a video recording or transcript of the deposition. Moreover, the Court is not convinced that there is any need for live streaming that would outweigh these significant concerns. The notice indicates that the depositions will be recorded by audio and video technology in addition to stenographic methods. So other counsel, legal assistants, consultants and/or potential expert witnesses will thus be able to view recordings and/or transcripts of the depositions at a later date. The Court therefore sustains the Railroad Plaintiffs' objections to live internet streaming of the depositions.

**IT IS THEREFORE ORDERED THAT** Railroad Plaintiffs' Motion for Protective Order and/or Motion to Limit Discovery Regarding Intervenor-Plaintiffs' Notice of Video Deposition Duces Tecum of Corporate Designee(s) (ECF No. 206) is GRANTED IN PART AND DENIED IN PART. Pursuant to Fed. R. Civ. P. 26(c), the Court grants Railroad Plaintiffs a protective order precluding any inquiry into Topics 1, 4, 5, 8, 11, and 13, and a protective order limiting inquiry under Topic 7 to statements made in the Project Narrative for the Southwest Chief Project covering the condition, repair, and maintenance of the track "five (5) miles on either side of the damaged track at the derailment site (Milepost 373.07)." Railroad Plaintiffs are also granted a protective order that they need not respond to Requests 6, 7, and 8, and limits Request 3 to "five (5) miles on either side of the damaged track at the derailment site (Milepost 373.07)." For the remaining Requests, Railroad Plaintiffs are not required to re-produce any responsive documents previously produced in this case if they instead include in their supplemental or amended response a list identifying all responsive documents by Bates stamp number (or other identifier) previously produced.

**IT IS FURTHER ORDERED THAT** the objection to live internet streaming of the depositions is SUSTAINED. Absent the express agreement of the parties to be deposed, Intervenor-Plaintiffs are prohibited from live internet streaming the depositions.

**IT IS FURTHER ORDERED THAT** each party shall bear its own expenses related to this motion.

**IT IS SO ORDERED.**

Dated September 26, 2017, at Kansas City, Kansas.

_____
Teresa J. James
U. S. Magistrate Judge