UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORP. and BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| and | ) | |
| | ) | |
| EVERETT OWEN, | ) | |
| et al., | ) | |
| Intervenor-Plaintiffs, | ) | |
| v. | ) | Case No. 16-cv-1094-JTM-TJJ |
| | ) | |
| CIMARRON CROSSING FEEDERS, LLC, | ) | |
| | ) | |
| Defendant, | ) | |
| and | ) | |
| | ) | |
| NATIONAL RAILROAD PASSENGER CORP. d/b/a AMTRAK; and BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants and Intervenor-Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Intervenor-Plaintiffs' Motion to Compel BNSF

Railway Corporate Designee(s) on Maintenance (ECF No. 226). Intervenor-Plaintiffs request an

order compelling Plaintiff BNSF Railway Company ("BNSF") to produce a Rule 30(b)(6)

corporate designee to testify on six areas of inquiry and produce documents responsive to six

corresponding document requests, all of which are related to BNSF's track maintenance,

inspection, and records. As set forth below, the motion is granted in part and denied in part.

## I.     FACTS RELEVANT TO THE DEPOSITION TOPICS AND DOCUMENT REQUESTS AT ISSUE[1]

On June 19, 2017, Intervenor-Plaintiffs served their Rule 30(b)(6) notice of video deposition duces tecum of corporate designee(s) on BNSF ("Notice"). The Notice set out nine areas of inquiry ("Topics") and eight requests for production of documents ("Requests") regarding BNSF's track "Maintenance, Inspection, and Records."[2]

## II.    APPLICABLE LAW

Before addressing the specific Topics and Requests, the Court sets out the relevant Rules applicable to its rulings.

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

When a party seeks to depose an organization, Rule 30(b)(6) requires that the deposition notice "describe with reasonable particularity the matters for examination." This means the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.[3] If the

---

[1] For a more detailed discussion of the facts, see the Court's December 19, 2016 Memorandum & Order (ECF No. 82). *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-CV-1094-JTM-TJJ, 2016 WL 7336409, at *1 (D. Kan. Dec. 19, 2016).

[2] *See* Notice of Video Dep. Duces Tecum of Corporate Designee(s) for BNSF at 6–7, ECF No. 227-1.

[3] *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006); *E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 421, 426 (D. Kan. 2007).

deponent "cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible."[4]

Rule 34(b)(1)(A) likewise requires that a request for production "must describe with reasonable particularity each item or category of items to be inspected." Though what qualifies as "reasonabl[y] particular" depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said "to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced."[5]

The party objecting to discovery bears the burden to support its objections.[6]

## III.    DISPUTED DEPOSITION TOPICS AND DOCUMENT REQUESTS

### 1.    Topic 1 and Request 1 (Derailment location maintenance and inspections)

Topic 1 requests that BNSF produce a Rule 30(b)(6) corporate designee to testify regarding "[a]ll maintenance and inspections performed at Milepost 373.07 and approximately five miles east and west of Milepost 373.07."  Request 1 similarly seeks production of "[a]ny and all documentation showing maintenance and/or inspections performed five miles east and west of Milepost 373.07." BNSF objects to the scope of Topic 1 and Request 1 on relevance grounds and as unduly burdensome.  It proposes that the scope be limited to the time period of a year before and up to the date of the derailment (March 14, 2015 to March 14, 2016) and to documents

---

[4] *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

[5] *Regan–Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008) (quoting 8A Wright & Miller, Federal Practice & Procedure § 2211).

[6] *McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 686 (D. Kan. 2000).

produced in discovery which cover inspections and maintenance for the same time period. It acknowledges that Intervenor-Plaintiffs have offered to limit Topic 1 to 2015 and 2016, which would include the post-derailment period, March 15, 2016 to December 31, 2016.

Intervenor-Plaintiffs assert that BNSF's maintenance and inspection records from after the derailment are relevant. They argue that in order for their experts to know if the rail has been changed and accurately reach their opinions in light of the changed conditions, they need to know what maintenance and inspection work was completed between the time of the derailment and the time of the scene inspection in December 2016. They allege that the evidence produced in this case reveals that there was a 25 mph slow order for this section of track, which was placed on February 10, 2016, and not removed until March 31, 2016, over two weeks after the derailment. Intervenor-Plaintiffs claim that the defect(s) necessitating this slow order and BNSF's remedial action after this derailment to lift the slow order are therefore relevant.

Intervenor-Plaintiffs have convinced the Court of the relevance of BNSF's post-derailment maintenance and inspection records for the vicinity of the derailment location. This post-derailment information is relevant to determine the nature and extent of any track repair or maintenance work after the derailment and before the parties' December 2016 track inspection. The Court also finds the requested testimony, documents, and information for the period a year before the derailment and through the December 2016 track inspection is proportional to the needs of the case. Intervenor-Plaintiffs' motion to compel is therefore granted in part as to Topic 1 and Request 1. BNSF shall produce a corporative representative to testify regarding Topic 1, limited to the time period March 14, 2015 through the date of the December 2016 track inspection, and produce all documents responsive (not previously produced) to Request 1 limited to that same time frame.

### 2.    Topic 2 (Appropriate time period for document production)

Topic 2 requests a BNSF corporate designee who can testify regarding the identification of the "appropriate time period" for document productions, including a "discussion of how, where and by whom the documentation and information identified in these areas of inquiry can be retrieved."

BNSF states in its response that it has agreed to produce a corporate representative to discuss the documents already produced in discovery, including how the documents are retrieved. BNSF argues, however, that the request it produce a corporate representative to "identify the appropriate time period for document productions" in reality raises a discovery issue either to be resolved by the parties or the Court.

Intervenor-Plaintiffs argue Topic 2 is a proper inquiry of a BNSF's designee so that they can discover what the corporation believes to be an appropriate time period for discovery. In addition, they argue this Topic is proper so they can ascertain the basis for BNSF's claim that it would be an undue burden and expense to produce documentation outside of BNSF's unilaterally selected time period.

The Court agrees with BNSF that asking a corporate designee to testify regarding the "appropriate time period" for document productions is not an appropriate inquiry of a Rule 30(b)(6) corporate representative. Counsel for the parties should confer and attempt to agree on the "appropriate time period" for any remaining document productions. If they cannot agree, after conferring in good faith, that is an issue to be brought to the Court for determination. Intervenor-Plaintiffs' motion to compel with respect to Topic 2 is denied.

### 3.    Topic 3 and Request 2 (Communications about subject track)

Topic 3 asks BNSF to produce a corporate representative to identify "any and all communications and recorded information kept by your railroad about the subject track, five miles east and west of Milepost 373.07, and its approaches including, but not limited to, electronically stored information."  Corresponding Request 2 asks BNSF to produce "[a]ny and all documentation of communications and recorded information kept by your railroad about the subject track."

BNSF objects to Topic 3 and Request 2 as excessively overbroad. Additionally, BNSF argues Topic 3 is not described with reasonable particularity as required by Rule 30(b)(6).  It argues that this Topic and the Request for items to be produced are so broadly worded that they place virtually an impossible task upon BNSF and do not permit BNSF to identify the outer limits of the area of inquiry. BNSF specifically takes issue with the use of the omnibus terms "about the subject track" and all "recorded information." It also asserts that Topic 3 is objectionable on its face as there are no reasonable subject matter limitations.  BNSF claims that Intervenor-Plaintiffs have not even attempted to identify whose communications among the nearly 40,000 employees of BNSF they seek or how they suggest BNSF reasonably search for such communications.  BNSF states that it has produced inspection and maintenance records, as well as BNSF dispatcher and BNSF Network Operations Center recordings.  It has also agreed to produce email communications concerning the incident, subject to its withholding certain privileged communications to be identified on a privilege log.  BNSF also objects that Topic 3 and Request 2 are still overly broad even with Intervenor-Plaintiffs' proposal to limit them to 2015 and 2016.

Intervenor-Plaintiffs state they anticipate that if BNSF produces maintenance of way communications, BNSF will unilaterally limit its production to communications concerning only the subject derailment. Intervenor-Plaintiffs clarify that they are seeking any letters, emails or intranet messages (as defined in the definitions) concerning this section of track for the years 2015 and 2016.

The Court finds Topic 3 and Request 2 are facially overbroad because they fail to include a specific relevant time limitation and because they broadly seek all communications and recorded information, including ESI, "about the track" without limitation.  They are also in part duplicitous of prior discovery responses to which BNSF has already responded and not proportional to the needs in this case. The Court, however, finds the Topic and Request seek relevant information if appropriately limited. The Court will therefore grant Intervenor-Plaintiffs' motion to compel Topic 3 and Request 2 in part, limited to only the time period March 14, 2015 through the date of the December 2016 track inspection and further limited to communications, including ESI, regarding the derailment at issue, track maintenance and inspection for the subject track, five miles east and west of Milepost 373.07.  Intervenor-Plaintiffs' motion to compel is therefore granted in part as to Topic 3 and Request 2.

4.    **Topic 4 and Request 3 (Post-derailment track installation or replacement)**

Topic 4 seeks testimony from a BNSF corporate designee "identifying when the track located approximately five miles east and west of Milepost 373.07 was installed or last replaced prior to the accident in this case." Request 3 seeks production of "[a]ny and all documentation that reflects when the track located five miles east and west of Milepost 373.07 was installed or last replaced prior to the accident."

BNSF objects to producing a corporate representative to testify and documents regarding any inspection and maintenance activities, including rail replacement, after the derailment. It contends that any post-derailment track inspection, maintenance, and replacement activities are not relevant to the liability issue of whether the track or inspection activities at the time of the derailment met federal standards. BNSF states it has already produced pre-derailment maintenance, inspection, and repair records for the subject track. It has also responded to discovery asking it to identify where jointed rail has been replaced with continuously welded rail and produced the track chart as of the date of the derailment, which reflects the Mileposts locations and age of the rail at such locations.

Intervenor-Plaintiffs contend information and documents regarding BNSF's replacement of rail after the derailment is relevant to show whether BNSF failed to repair track before the derailment and whether track or rail defects were present at the time of the derailment. They contend this evidence is relevant to Intervenor-Plaintiffs' claim that BNSF acted with reckless disregard for the safety of the traveling public by failing to properly identify, document, report or repair hazardous track conditions, and failing to warn Amtrak trains of hazardous track conditions. They also contend that post-derailment information is necessary for their experts to know what sections of track were repaired or replaced, and whether that occurred before or after the derailment or the December 2016 track inspection.

BNSF's post-derailment track installation or replacement for the vicinity of the derailment location is relevant to whether there were track or rail defects at the time of the derailment. The Court, however, finds Topic 4 and Request 3 are overly broad and limits them to the time period March 14, 2015 through the date of the December 2016 track inspection.

**5.      Topic 5 and Request 4 (Identification of track maintenance and inspection employees)**

Topic 5 seeks testimony from BNSF's 30(b)(6) corporate representative(s) regarding:

Identification of work gangs, railroad employees, managers, supervisors contractors, government employees or others who have done maintenance or inspections on or over the track located five miles east and west of Milepost 373.07. This includes current and former employees.

Request 4 similarly seeks production of "[a]ny and all documentation that reflects the identity of work gangs, railroad employees, managers, supervisors contractors, government employees or others who have done maintenance or inspections on or over the five miles east and west of Milepost 373.07."

As BNSF points out, the Court has already ruled on an interrogatory seeking similar BNSF track maintenance gang employee information. Intervenor-Plaintiffs' Interrogatory No. 19 asked BNSF to identify "all employees [including former employees] by full name and job title that were part of the following [nine maintenance] gangs from March 2015 through December 2016." In its October 12, 2017 Memorandum and Order (ECF No. 242), the Court granted in part Intervenor-Plaintiffs' motion to compel, but limited the interrogatory to the six-month time period preceding the derailment (September 14, 2015 through March 14, 2016). The Court based its ruling on Intervenor-Plaintiffs' failure to show the relevance of track maintenance employee information for the requested nine-month period *after* the March 14, 2016 derailment. The Court further found that BNSF had shown the burdensome nature of the interrogatory requesting information on maintenance gang employees, who frequently change, and therefore limited the interrogatory to the six months preceding the derailment.

Intervenor-Plaintiffs attempt to distinguish Topic 5 and Request 4 from their prior interrogatory. They contend that this Topic and Request are seeking BNSF former employees to

discuss what work was, or was not actually completed by the previously identified BNSF gangs and are not seeking "BNSF talking heads [who] may be contacted through BNSF's counsel." Intervenor-Plaintiffs further point out that the largest gang identified by BNSF has three members so it would not be unduly burdensome for BNSF to identify the employees who were part of that gang for the year leading up to the derailment and those who are no longer employed at BNSF.

This Topic and Request do seem largely duplicitous of Interrogatory No. 19, to which BNSF has already responded.  However, Intervenor-Plaintiffs appear to be primarily concerned with former employees who performed maintenance or inspections for this section of track who may not have been previously identified by BNSF in response to Interrogatory No. 19. Like its prior ruling with respect to Interrogatory No. 19, the Court grants in part Intervenor-Plaintiffs' motion to compel as to Topic 5 and Request 4, but limits the scope of them to the six-month time period preceding the derailment (September 14, 2015 through March 14, 2016).

### 6.    Topic 6 and Request 6 (Post-derailment slow orders)

Topic 7 seeks testimony regarding "[s]low orders that reduce train speeds over the track of the derailment, five miles east and west of Milepost 373.07." Corresponding Request 6[7] asks BNSF to produce "[s]low orders that affected the track located five miles east and five miles west of milepost 373.07."

BNSF states it has already produced the slow order log, which depicts these slow orders issued for the requested track for one year prior to and through the date of the derailment. This slow order data includes: the date of the slow order, the mile posts where the slow order covered

---

[7] This document request is incorrectly numbered as "10" on the Notice, ECF No. 227-1.

the track, the speed restriction, the date the slow order was placed, the reason for the slow order, the normal track speed and the date the slow order was removed. BNSF objects to discovery concerning slow orders put in place *after* the derailment because such slow orders are not relevant and have no bearing upon the operation of the train at issue in the incident, the condition of the track at the time of the derailment, or BNSF's maintenance and inspection activities leading up to the time of the derailment.

Intervenor-Plaintiffs explain that BNSF's "slow order log" limited the dates from October 10, 2015 through March 14, 2016, but they are requesting the "slow order log" for all slow orders for this section of track in 2015 and 2016. Intervenor-Plaintiffs argue the requested slow orders post-derailment are relevant to discover defects which were not identified prior to the derailment, but should have been, and whether a corresponding slow order should have been put in place. It is also relevant to discover the defects BNSF identified, slow ordered, and repaired in between the time of the derailment and Intervenor-Plaintiffs' inspection, and if there were defects that BNSF identified but chose not to slow order in violation of its own rules. This evidence will also reveal what repairs or replacements to this section of track, if any, occurred during this time period. Intervenor-Plaintiffs also dispute BNSF's claim producing these records is unduly burdensome, alleging the slow orders are kept in a BNSF database and specific date parameters can be selected.

The Court finds that post-derailment slow orders for the derailment location would be relevant to whether there were pre-derailment track defects. The Court, however, finds Topic 6 and Request 6 are overly broad and limits them to the time period March 14, 2015 through the date of the December 2016 track inspection.

### 7.    Request 5 (Hardware and software needed to access ESI)

Request 5 asks BNSF to produce "[a]ll hardware, software, and personnel, necessary to provide access to any electronic data concerning maintenance and inspections at the subject track, five miles east and west of Milepost 373.07."

BNSF preliminarily objects to this Request as not satisfying the "reasonable particularity" requirements of Rule 34(b). It argues that Intervenor-Plaintiffs have refused to identify what specific ESI they have not been provided access to and why it is necessary to burden it with the burden of producing hardware, software and personnel to provide access to electronic data. BNSF submits that it has produced to Intervenor-Plaintiffs precisely what they have requested concerning inspection and maintenance records that BNSF maintains in the ordinary course of business. BNSF claims Intervenor-Plaintiffs also falsely allege that BNSF has given Intervenor-Plaintiffs limited screenshots of selected data contained in its databases. Rather, BNSF claims it has produced to Intervenor-Plaintiffs the maintenance and inspection reports that it provides to its own field employees to document inspections that have been conducted and maintenance that has been performed. BNSF contends that an order compelling production of its software would violate copyright laws, and the federal discovery rules simply do not require BNSF to turn over hardware or software for Intervenor-Plaintiffs' use.

In their reply, Intervenor-Plaintiffs state they are requesting BNSF's designee bring a laptop with access to BNSF's intranet system and, at the direction of Intervenor- Plaintiffs' counsel, the BNSF designee will navigate through the maintenance and inspection databases and download the full database readouts for this section of track. They contend this discovery is necessary to allow Intervenor-Plaintiffs to review metadata to determine if there has been any tampering with the inspection and maintenance reports.

The Court sustains all of BNSF's objections to Request 5. The matters for examination stated in the Request are not described with reasonable particularity as required by Rule 30(b)(6). Nor have Intervenor-Plaintiffs shown the relevance of the overly broad request for "hardware, software, and personnel, necessary to provide access to any electronic data concerning maintenance and inspections at the subject track." The Request is also not proportional to the needs of the case. The Court denies Intervenor-Plaintiffs' motion to compel with respect to Request 5.

**IT IS THEREFORE ORDERED THAT** Intervenor-Plaintiffs' Motion to Compel BNSF Railway Corporate Designee(s) on Maintenance (ECF No. 226) is GRANTED IN PART AND DENIED IN PART.  The motion is granted in part as to Topics 1, 3, 4, 5, and 6, and Requests 1, 2, 3, 4, and 6, subject to the specific limitations set out herein. The motion is denied as to Topic 2 and Request 5.

**IT IS FURTHER ORDERED THAT** each party shall bear its own expenses related to this motion.

**IT IS SO ORDERED.**

Dated December 1, 2017, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge